**Kris Renee JOHNSON, Relator,**

v.

**DOLPHIN STAFFING, Commissioner of Economic Security, Respondents.**

**No. C2–99–2037.**

Court of Appeals of Minnesota.

July 18, 2000.

Review Denied Sept. 13, 2000.

Kris Renee Johnson, Minneapolis, pro se relator.

Dolphin Staffing, Dolphin Clerical Group TCG Incorporated, Minneapolis, Kent E. Todd, St. Paul, for respondent Commissioner of Economic Security.

Considered and decided by KLAPHAKE, Presiding Judge, KALITOWSKI, Judge, and STONEBURNER, Judge.

## OPINION

KALITOWSKI, Judge.

Relator Kris Renee Johnson challenges the determination of the commissioner's representative that she was disqualified from reemployment insurance benefits for failure to accept suitable employment, pursuant to Minn.Stat. § 268.095, subd. 8(a)(2) (1998).[1] We reverse.

## FACTS

Relator submitted an employment application to respondent Dolphin Staffing on March 15, 1999. She indicated that she had secretarial, data entry, and telephone experience and was available for permanent or long-term, full-time work. Relator completed her first work assignment through Dolphin from March 18 through March 25, 1999.

She accepted a subsequent assignment to begin on March 29, 1999, at a business in downtown Minneapolis. She traveled to the business early that morning, only to discover that the company was not located at the address she had been given. She immediately contacted Dolphin and spoke with a staffing consultant, who informed her that the assignment had been canceled but offered relator an alternative assignment at Northstar Title beginning that day and lasting until at least June 4. Relator considered the offer for a short time and then called back and accepted it.

Relator arrived at Northstar at nine o'clock that morning and began a training session, where a supervisor told her that the job could become permanent. Relator responded that she was not interested in permanent employment. She then called the Dolphin staffing consultant and informed him that Northstar was seeking a permanent employee and that she only wanted temporary work. Relator asked whether she should continue in the position and was told that she should. She called Dolphin again later that day and said that she did not wish to continue working at Northstar. She did not return to Northstar after the first day. Dolphin later received a report from Northstar that relator was unfriendly and had complained that Dolphin forced her to take the position.

---

1. The legislature recently amended the reemployment compensation statutes. Because all of the events relevant to a determination of relator's initial eligibility occurred prior to the effective date of the amendments, we apply the substance and terminology of the reemployment insurance statutes in effect at that time. We note, however, that nothing in the amendments would affect our holding here.

Dolphin subsequently offered relator another work assignment from April 20–23, 1999, which she successfully completed. On April 28, 1999, she accepted what was to be her last assignment through Dolphin, a position as a law firm receptionist. On May 10, 1999, Dolphin informed relator that this assignment had been canceled because the law firm was not happy with her performance. Relator has had no further job assignments with Dolphin.

Relator established her reemployment insurance account on June 27, 1999. On her application, she indicated a discharge date of May 10, 1999, the date of her discharge from the law firm. The department determined that relator was eligible for benefits, and Dolphin appealed. The reemployment insurance judge affirmed, finding that claimant was not disqualified from benefits because her discharge from the law firm was for reasons other than misconduct.

Dolphin appealed to the commissioner's representative, who agreed that relator had not been discharged from the law firm for misconduct. But the commissioner's representative concluded that relator was disqualified for failure to accept suitable employment, by turning down the potentially permanent assignment with Northstar Title that was to have run from March 29 until at least June 4.

## ISSUE

Did the commissioner's representative err by determining that relator was disqualified from receiving reemployment insurance benefits because she failed to accept suitable employment?

## ANALYSIS

█ Appellate review of the commissioner's factual findings is limited to whether the evidence, viewed in the light most favorable to the decision, supports that decision. *Lolling v. Midwest Patrol,* 545 N.W.2d 372, 377 (Minn.1996). The ultimate determination of whether an employee is properly disqualified from receiving benefits is a question of law, subject to de novo review. *Id.*

The reemployment insurance fund is available only to individuals who are unemployed through no fault of their own. Minn.Stat. § 268.03, subd. 1 (1998). A claimant is disqualified from benefits if, without good cause, he or she fails to seek or accept suitable employment when offered. Minn.Stat. § 268.095, subd. 8(a)(2) (1998). Suitable employment is "employment in the claimant's labor market area that is reasonably related to the claimant's qualifications." Minn.Stat. § 268.095, subd. 9(a) (1998).

█ Relator challenges the commissioner's factual finding that the employment with Northstar was "suitable employment." We need not reach this issue, however, because we conclude that the commissioner erred as a matter of law by determining that relator was disqualified for rejecting a job offer she received before her claim for benefits arose.

Relator argues that her refusal to accept suitable work on March 29, 1999, is irrelevant to her claim for reemployment insurance benefits. We agree. Relator accepted subsequent assignments from Dolphin after March 29 and only sought benefits following her discharge from the law firm on May 10, 1999. Thus, even assuming that the position with Northstar was "suitable employment," the offer came more than a month *before* the discharge that resulted in her claim for benefits.

The commissioner's representative relied on Minn.Stat. § 268.095, subds. 8 and 9, in support of the determination that relator was disqualified. Subdivision 8 provides that a claimant is disqualified from benefits for failing to accept an offer of suitable employment and subdivision 9 defines "suitable employment" as employment in the claimant's labor market area that is reasonably related to his or her qualifications. But neither of these subdivisions nor any other provision under the reemployment insurance statutes supports

disqualification for rejecting a job offer that predates a claim for benefits.

We note that relator was not required to disclose the job offer from Northstar in order to meet the express statutory obligations imposed on an individual seeking reemployment insurance benefits. Under Minn.Stat. § 268.101, subd. 1(a) (1998), a claimant must disclose "the names of all employers and the reasons for no longer working for all employers during the claimant's last 30 days of employment." The statute plainly identifies the reason for this requirement:

> The purpose for requiring the claimant to report the name of all employers and the reason for no longer working for all employers during the claimant's "last 30 days of employment" is for the commissioner to obtain information from a claimant on all issues that have the potential for disqualifying the claimant from benefits under section 268.095.

Minn.Stat. § 268.101, subd. 1(d). This same subdivision details a claimant's obligation to disclose offers of employment, which is limited to offers made *subsequent* to a claim for benefits:

> Each claimant shall report any employment, loss of employment, and offers of employment received, *during those weeks the claimant made continued claim for benefits.* * * * The claimant shall report any offers of employment *during the period between the making of continued claims.*

Minn.Stat. § 268.101, subd. 1(c) (emphasis added). In other words, a claimant must disclose all employers in the 30 days prior to making a claim, but is only required to report offers of employment that occur after the claim. Here, relator was not

obligated to disclose the position under either requirement.

The commissioner's representative cited no legal authority for the proposition that disqualification occurs when a claimant rejects a job offer that predates a claim for benefits. Dolphin points to no such authority on appeal, and our independent research similarly reveals no cases in which a claimant was deemed "disqualified" for refusing a job offer made before the right to claim reemployment insurance benefits even existed. A number of cases address the ramifications of a claimant's refusal to accept an offer of employment made after making a claim for reemployment benefits, but all involve job offers made after the right to claim benefits arose, not before.[2] By disqualifying relator for failing to accept employment with Northstar, the commissioner's representative in effect imposed a stricter disclosure requirement than the legislature contemplated, contrary to the general rule that the disqualification provisions are to be narrowly construed. *See, e.g., Hansen v. C.W. Mears, Inc.,* 486 N.W.2d 776, 779 (Minn.App.1992), *review denied* (Minn. July 16, 1992).

Finally, we note that Dolphin does not appear to have raised or argued the suitability of the offer of employment from Northstar until its appeal to the commissioner's representative of the reemployment insurance judge's decision. We are troubled by the apparent failure to afford relator any prior notice that her refusal to accept employment with Northstar might be at issue. But because we decide this case on its merits, we need not address relator's argument that she was denied procedural due process.

---

2. *See, e.g., Valenty v. Medical Concepts Dev., Inc.,* 503 N.W.2d 131, 134 (Minn.1993) (holding that a claimant who accepted unsuitable employment was not disqualified from receiving benefits for subsequently terminating that employment); *Whitehead v. Moonlight Nursing Care, Inc.,* 529 N.W.2d 350, 352 (Minn.App.1995) (concluding claimant was not disqualified for refusing to accept a new assignment from temporary employer where employer only left a message and never contacted claimant personally); *Henry v. Dolphin Temporary Help Servs.,* 386 N.W.2d 277, 280 (Minn.App.1986) (finding claimant was not disqualified from receiving continued benefits from base-period employer because she sought and/or rejected temporary assignments from temporary employer).

## D E C I S I O N

The commissioner's representative erred as a matter of law in determining that relator was disqualified from reemployment insurance benefits for failure to accept an offer of suitable employment that predated her claim for benefits.

**Reversed.**